UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00473-FDW-DCK

| | |
|---|---|
| ITW CHARLOTTE, LLC, ONCE, LLC, and BURLINGAME INVESTMENTS HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> ITW COMMERCIAL CONSTRUCTION, NORTH AMERICA, a division of ILLINOIS TOOL WORKS, INC. <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action (Doc. No. 3), Plaintiffs' Response to Defendant's Motion to Dismiss (Doc. No. 14), and Defendant's Reply (Doc. No. 15). Upon review by the Court, for the reasons stated below, Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action (Doc. No. 3) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is DENIED.

## I. BACKGROUND

This action arises from the commercial lease entered into between Plaintiffs ITW Charlotte, LLC, Once, LLC, and Burlingame Investment Holdings, LLC (collectively "Landlord") and Defendant, ITW Commercial Construction, North America ("CCNA"). In April of 2016, Landlord and CCNA entered into a lease agreement (the "Lease") for a commercial building (the "Building") located at 2027 Gateway Boulevard, Charlotte, NC. (Doc. No. 1-1, p. 1). This dispute arose after

1

the fire suppression system ("FSS") located in the Building was found to be inadequate for CCNA to conduct its operations without modification.

Landlord alleges that prior to the execution of the Lease, CCNA conducted an inspection of the Building to determine if it was satisfactory for its intended use. Id. at 2. Landlord alleges that during the inspection CCNA had the opportunity to observe the FSS but issued no objection to its condition. Id. CCNA admits that it was permitted to view certain visible portions of the FSS but alleges that some of the defects in the sprinkler system were not reasonably discoverable during the initial inspection. Id. at 65. After entering into the Lease, CCNA determined that the FSS was insufficient for its use of the Building. Id. at 2. CCNA then sent a letter to Landlord requesting permission to make modifications to the FSS. Id. Upon receiving Landlord's approval, CCNA then paid to have the proposed alterations performed. Id. at 3.

On April 27, 2017, CCNA sent a letter (the "Default Notice") to Landlord, asserting that Landlord had breached Section 15.02 of the Lease by failing to pay for the modifications to the FSS. Id. Landlord rejected CCNA's demand, arguing that it was not obligated to pay for these modifications under the Lease and therefore no default existed. Id.

On May 13, 2017, Landlord entered in a sale agreement with a third-party. Id. at 4. This sale agreement was conditioned upon obtaining a valid Estoppel Certificate from CCNA, indicating that no defaults under the Lease existed. Id. On May 23, 2017, CCNA received an Estoppel Certificate from Landlord. Id. at 67. CCNA timely executed the Estoppel Certificate, including in it a disclosure that Landlord was in default of the Lease. Id. As a result, Landlord was unable to complete the conveyance of the property to the buyer. Id. at 4.

Both parties contend that the other is responsible for the cost of the modifications to the FSS. Landlord filed this present action seeking a declaratory judgment and asserting a claim for tortious interference with contract for CCNA's alleged interference with Landlord's contract to sell the property. Id. CCNA has filed a counterclaim, also seeking a declaratory judgment and asserting a breach of contract claim for the Landlord's alleged breach of Section 12.02(B) of the Lease. On August 10, 2017, CCNA filed a Motion to Dismiss Landlord's tortious interference claim pursuant to rule 12(b)(6). (Doc. No. 3).

## II. STANDARD OF REVIEW

In order to survive a 12(b)(6) motion to dismiss, a complaint must contain more than mere legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." Id. at 556.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules

3

of Civil Procedure] mark[ ] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief 'will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore it should be dismissed. Id. (quoting Fed.R.Civ.P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

### III. ANALYSIS

CCNA contends that Landlord's tortious interference with contract claim fails for two reasons: (1) because Landlord cannot establish that CCNA acted "without justification" in disclosing Landlord's alleged default in the Estoppel Certificate; and (2) because under the economic loss doctrine, Landlord cannot recover purely economic damages in tort where the parties' obligation arises out of contract. The Court addresses each of these arguments below.

**A. Tortious Interference with Contract: "Without Justification"**

CCNA argues that Landlord has failed to state a claim upon which relief may be granted because it has not and cannot establish the fourth element of its tortious interference claim, that CCNA acted "without justification." (Doc. No. 4, p. 7).

Under North Carolina law, a claim for tortious interference with contract consists of proof of (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party not to perform the contract; (4) absence of justification; and (5) damages. Cupples v. Amsan, LLC, DOCKET NO. 3:04-CV-574-W., 2007 BL 237255 (W.D.N.C Mar. 30, 2007) (citing Embree Construction Group, Inc. v. Rafcor, Inc., 330 N.C. 487 (1992)). A person "acts without justification in inducing the breach of contract . . . if he has no sufficient lawful reason for his conduct." Childress v. Abeles, 240 N.C. 667, 675 (1954). "Generally speaking, interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." Embree Constr. Grp., 330 N.C. at 498. In order to demonstrate the element of acting in the absence of justification, the action "must admit of no motive for interference other than malice." Carter v. Ozoeneh, No. 3:08CV614-RJC-DSC, 2010 WL 890260, at *4 (W.D.N.C. Mar. 8, 2010) (citing Privette v. Univ. of N.C., 385 S.E.2d 185, 190 (N.C. App 1989)). Plaintiff's complaint must plead factual content that would allow the court to draw the reasonable inference that Defendant acted with malice and for a reason not reasonably related to the protection of a legitimate business interest. Fen-Phen Series 2005-01 v. Farrin, No. 1:09CV479, 2010 WL 1740521, at *4 (M.D.N.C. Apr. 28, 2010) (citing Cobra Capital, LLC v. RF Nitro Commc'ns, Inc., 266 F.Supp.2d 432, 439 (M.D.N.C.2003) (internal quotations omitted)).

Here, CCNA argues that Landlord has failed to allege facts showing that CCNA acted with malice or for a reason that was unrelated to protecting its own business interests. (Doc. No. 4, p. 8-9). This Court disagrees. Landlord alleges that CCNA's actions were "not justified and are solely designed to compel the (Plaintiffs) to pay for the FSS Modifications in order to complete the sale of the (Building) to the Buyer." (Doc. No. 1-1, p. 4). In other words, Landlord essentially alleges that CCNA inappropriately used an invalid Estoppel Certificate as leverage in an attempt to coerce Landlord into paying for modifications that Landlord argues it is not obligated to pay. While Landlord does not explicitly state in its Complaint that CCNA acted with malice, its factual allegations allow this Court to make the reasonable inference that CCNA's actions, as alleged, were malicious and not related to protecting a legitimate business interest.

CCNA also contends that the tortious interference claim should be dismissed because Landlord's complaint admits that CCNA's conduct was justified. (Doc. No. 4, p. 9). CCNA argues that Landlord's allegations establish that CCNA acted consistently with the parties contractual rights under the Lease. Id. at 10. The Court, however, does not agree that Landlord's allegations are fatal to its tortious interference claim. The North Carolina Supreme Court has held that it is unreasonable to require a plaintiff to negate in its pleadings facts that more properly support a defense, agreeing with a California appellate court that "[u]nless it appears on the face of the complaint that a defendant's conduct was justified, justification is an affirmative defense. Embree Const. Grp., Inc. 330 N.C. at 499. The Court agrees with Plaintiffs that it is not the Plaintiffs' burden to disprove Defendant's belief that it was justified in withholding the Estoppel Certificate, but Defendant's burden to meet the objective determination that its actions were justified as an

appropriate means to protect a legitimate business interest. (Doc. No. 14, p. 10). Accordingly, the Court does not see fit to dismiss Landlord's claim under this argument.

### B. Economic Loss Doctrine

CCNA argues that Landlord's tortious interference claim should be dismissed because it is barred by the economic loss rule. (Doc. No. 4, p. 11).

Under North Carolina's economic loss doctrine, a breach of contract does not ordinarily "give rise to a tort action by the promisee against the promisor." Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (quoting N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73 (1978)). More specifically, the doctrine prohibits recovery for purely economic loss in tort when a contract operates to allocate risk. Id. North Carolina and federal courts have applied the economic loss doctrine to bar a variety of tort claims that "piggy back" breach of contract claims. See Akzo Noel Coatings, Inc. v. Rogers, 2011 NCBC 41, 2011 WL 5316772 (N.C. Super. Ct. Nov. 3, 2011). In other words, in a breach of contract action the economic loss doctrine prohibits a plaintiff from asserting tort claims that are not identifiable and distinct from the primary breach of contract claims. See Superior Performers, Inc. v. Meaike, No. 1:13CV1149, 2014 WL 5819826, at *7 (M.D.N.C. Nov. 10, 2014). "The mere failure to carry out a promise in contract" is insufficient to support a tortious interference claim. Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp., 15 F.3d 327, 331 (4th Cir. 1994); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998). "The policy behind the independent tort exception is to keep open-ended tort damages from distorting contractual relations in light of the fundamental difference between tort and contract claims." ACS Partners, LLC v. Americon

Grp.,Inc., No. 3:09CV464-RJC-DSC, 2010 WL 883663 (W.D.N.C. Mar. 5, 2010) (citations and quotation marks omitted).

In this case, Landlord raises no claim for breach of contract. Thus, no breach claim simultaneously encompasses the conduct underlying Landlord's tort claims. Landlord also does not allege that CCNA merely failed to perform under the contract. Rather, Landlord alleges that it was CCNA's willful conduct that harmed Landlord's contract with the third-party buyer. Accordingly, this Court finds that the economic loss doctrine does not bar Landlord's tortious interference claim.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action (Doc. No. 3) pursuant to Rule 12(b)(6) is DENIED. The Court finds that Plaintiffs' Complaint (Doc. No. 1-1) pleads facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." Twombly, 550 U.S. at 570.

IT IS SO ORDERED.

Signed: October 20, 2017

Frank D. Whitney
Chief United States District Judge