UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00473-FDW-DCK

| | |
|---|---|
| ITW CHARLOTTE, LLC, ONCE, LLC, and BURLINGAME INVESTMENTS HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>ITW COMMERCIAL CONSTRUCTION, NORTH AMERICA, a division of ILLINOIS TOOL WORKS, INC.,<br><br>    Defendant. | ORDER |

THIS MATTER is before the Court on Defendant's Motion for Reconsideration (Doc. No. 23). Defendant contends that this Court erred in denying Defendant's motion to dismiss Plaintiffs' claim for tortious interference with contract. In particular, Defendant requests reconsideration of the Court's denial of Defendant's economic loss doctrine argument. For the reasons stated herein, the Court determines that the economic loss doctrine does not bar Plaintiffs' claim for tortious interference with contract. Accordingly, Defendant's Motion for Reconsideration (Doc. No. 23) is DENIED.

**I. BACKGROUND**

Plaintiffs' allegations of fact remain the same as those discussed in the Court's previous Order (Doc. No. 20). This action arises from the commercial lease entered into between Plaintiffs ITW Charlotte, LLC, Once, LLC, and Burlingame Investment Holdings, LLC (collectively "Landlord") and Defendant, ITW Commercial Construction, North America ("CCNA"). In April

1

of 2016, Landlord and CCNA entered into a lease agreement (the "Lease") for a commercial building (the "Building") located at 2027 Gateway Boulevard, Charlotte, NC. (Doc. No. 1-1, p. 1). This dispute arose after the fire suppression system ("FSS") located in the Building was found to be inadequate for CCNA to conduct its operations without modification.

Landlord alleges that prior to the execution of the Lease, CCNA conducted an inspection of the Building to determine if it was satisfactory for its intended use. Id. at 2. Landlord alleges that during the inspection CCNA had the opportunity to observe the FSS and issued no objection to its condition. Id. CCNA admits that it was permitted to view certain visible portions of the FSS but alleges that some of the defects in the sprinkler system were not reasonably discoverable during the initial inspection. Id. at 65. After entering into the Lease, CCNA determined that the FSS was insufficient for its use of the Building. Id. at 2. CCNA then sent a letter to Landlord requesting permission to make modifications to the FSS. Id. Upon receiving Landlord's approval, CCNA then paid to have the proposed alterations performed. Id. at 3.

On April 27, 2017, CCNA sent a letter (the "Default Notice") to Landlord, asserting that Landlord had breached Section 15.02 of the Lease by failing to pay for the modifications to the FSS. Id. Landlord rejected CCNA's demand, arguing that it was not obligated to pay for these modifications under the Lease and therefore no default existed. Id.

On May 13, 2017, Landlord entered in a sale agreement with a third-party. Id. at 4. This sale agreement was conditioned upon obtaining a valid Estoppel Certificate from CCNA, indicating that no defaults under the Lease existed. Id. On May 23, 2017, CCNA received an Estoppel Certificate from Landlord. Id. at 67. CCNA timely executed the Estoppel Certificate,

including in it a disclosure that Landlord was in default of the Lease. Id. As a result, Landlord was unable to complete the conveyance of the property to the buyer. Id. at 4.

Both parties contend that the other is responsible for the cost of the modifications to the FSS. Landlord filed this present action seeking a declaratory judgment and asserting a claim for tortious interference with contract for CCNA's alleged interference with Landlord's contract to sell the property. Id. CCNA has filed a counterclaim, also seeking a declaratory judgment and asserting a breach of contract claim for the Landlord's alleged breach of Section 12.02(B) of the Lease. On August 10, 2017, CCNA filed a Motion to Dismiss Landlord's tortious interference claim pursuant to Rule 12(b)(6). (Doc. No. 3).

On October 20, 2017, this Court entered an Order denying Motion to Dismiss Plaintiffs' tortious interference with contract claim (Doc. No. 20). Defendant filed its Motion for Reconsideration (Doc. No. 23) on November 17, 2017, arguing that the Court erred in denying CCNA's economic loss doctrine argument.

## II. STANDARD OF REVIEW

Defendant's Motion to Dismiss under Rule 12(b)(6) argues that Plaintiffs second cause of action fails to state any claim upon which relief can be granted. (Doc. No. 3, p. 1). In order to survive a 12(b)(6) motion to dismiss, a complaint must contain more than mere legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The claim is facially plausible

when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." Id. at 556.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[ ] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief 'will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore it should be dismissed. Id. (quoting Fed.R.Civ.P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

4

## III. ANALYSIS

Defendant argues that this Court erred in denying Defendant's motion to dismiss Plaintiffs' claim for tortious interference with contract. (Doc. No. 23-1, p. 1). In particular, Defendant requests reconsideration of the Court's denial of Defendant's economic loss doctrine argument. Id. The Court reconsiders its ruling but ultimately reaches the same conclusion. Given the facts alleged, and for the reasons stated below, the economic loss doctrine does not bar Plaintiffs' claim for tortious interference with contract.

### A. Economic Loss Doctrine

North Carolina's economic loss doctrine is a recognition of the fundamental difference between tort and contract claims and is often viewed as a necessity in preventing open-ended tort damages from distorting contractual relations. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998). In general, the doctrine provides that a mere breach of contract does not ordinarily give rise to a tort action by promisee against promisor. See e.g., Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015). The rationale for the rule is that "parties are free to include, or exclude, provisions as to the parties' respective rights and remedies," and that under some circumstances "[t]o give a party a remedy in tort . . . would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract." Id. (quoting Moore v. Coachmen Indus., Inc., 129 N.C.App. 389, 499 S.E.2d 772, 780 (1998)). But the economic loss doctrine is by no means an automatic bar to all tort claims arising from conduct resulting in breach of contract claims. Courts applying North Carolina's economic loss

doctrine have long held that a plaintiff may pursue a tort action where there exists an independent and identifiable tort, even if the tort also constitutes, or accompanies, a breach of contract. See Broussard, 155 F.3d at 346 (4th Cir. 1998) ("In recognition of the fundamental difference between tort and contract claims . . . North Carolina has recognized an 'independent tort' arising out of breach of contract only in 'carefully circumscribed' circumstances."); see also Newton v. Standard Fire Insurance Co., 291 N.C. 105, 111 (1976)). Such tortious conduct must also be accompanied, however, by a sufficient aggravating element such as fraud, malice, reckless indifference, oppression, insult, or willfulness. See Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp., 15 F.3d 327, 331 (4th Cir. 1994); see also Schumacher Immobilien Und Beteiligungs AG v. Prova, Inc., No. 109CV00018, 2010 WL 3943754, at *2 (M.D.N.C. Oct. 7, 2010); see also ACS Partners, LLC v. Americon Grp., Inc., No. 3:09CV464-RJC-DSC, 2010 WL 883663, at *7 (W.D.N.C. Mar. 5, 2010).

In its Motion for Reconsideration (Doc. No. 23), Defendant contends that the dispositive factor in determining whether Plaintiffs' claim is barred by the economic loss doctrine is the "origin of CCNA's duty." (Doc. No. 23-1, p. 6). Defendant concludes that because CCNA's duty to provide an Estoppel Certificate arises only out of the parties' contract, Plaintiffs' only remedy is in contract, not tort. Id. Such an argument, however, fails to acknowledge the nature of Plaintiffs' claim. While it is true that a plaintiff must allege a duty owed to him by the defendant separate and distinct from any duty owed under a contract in order to pursue a tort claim and breach of contract claim arising out of the same conduct, such a duty is readily apparent in Plaintiffs' claim. See Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F.Supp. 350, 362 (W.D.N.C.1997). Plaintiffs have asserted a claim for tortious interference with contract; without

a doubt Defendant has a duty to refrain from interfering with another's contractual relationships. See Dunlap v. Cottman Transmissions Sys., LLC, 576 F. App'x 225, 226 (4th Cir. 2014) (noting that tortious interference with contract is an intentional tort predicated on the common law duty to refrain from interfering with another's contractual and business relationships). Therefore, contrary to Defendant's contention, the relevant inquiry here is whether the alleged conduct falls within the scope of the parties' agreement and within the realm of contract law. See Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 800 (E.D.N.C. 2005). Defendant's alleged conduct does not.

### B. Tortious Interference with Contract and the Economic Loss Doctrine

While the earliest cases invoking the principles of North Carolina's economic loss doctrine did so in the context of negligence and products liability, the doctrine has been applied more broadly in recent years. See Severn 807 F.3d at 94. This Court has even applied North Carolina's economic loss doctrine to bar claims for tortious interference with contract. See ACS Partners, LLC v. Americon Grp., Inc., No. 3:09CV464-RJC-DSC, 2010 WL 883663, at *8 (W.D.N.C. Mar. 5, 2010). In ACS Partners, LLC v. Americon Group, Inc. this Court determined that the economic loss doctrine barred the plaintiff's tortious interference with contract claim because the claim was neither identifiable nor distinct from the breach of contract. Id. There, however, the plaintiff failed to allege the existence of a valid contract between plaintiff and a third party or that the defendant intentionally induced a third party not to perform the contract. Id.

Such is not the case here. Unlike in ACS Partners, LLC v. Americon Group, Inc., here Plaintiffs' claim for tortious interference with contract is identifiable and distinct from a breach of

7

contract claim. Plaintiffs have alleged that the Landlord entered into a valid sale agreement with a third party buyer; that the Tenant's refusal to execute a "valid and suitable" Estoppel Certificate constituted an intentional inducement to the third party buyer not to purchase the Lease Premises; and furthermore, that this conduct was "not justified" and was done solely to "compel Landlord to pay for the FSS Modifications." (Doc. No. 1-1, p. 4). Thus, the conduct Plaintiffs allege is not merely a breach or a failure to perform under a contract. Accordingly, this Court determines that Plaintiffs have alleged sufficient facts to support a plausible claim for an identifiable and independent tort that is distinct from a mere breach a contract claim and is accompanied by sufficient aggravating circumstances. Consequently the economic loss doctrine does not apply and the claim survives Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

If after discovery the evidence is inconsistent with Plaintiffs allegations, Plaintiff's second cause of action would be subject to dismissal at that time.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Reconsideration (Doc. No. 23) is DENIED; for the reasons stated herein the Court determines that the economic loss doctrine does not bar Plaintiff's second cause of action.

IT IS SO ORDERED.

Signed: December 21, 2017

Frank D. Whitney
Chief United States District Judge